## 4161.  ROBINSON *v.* THE STATE.

To shoot at any of the game specified in the act of 1911 (Acts 1911, p. 137), during the closed season designated therein, is a violation of its terms, which make it a penal offense to hunt, kill, or destroy by any means whatever, between the dates stated, any of the game mentioned in the act. An instruction to the effect that shooting, or shooting at, any of the protected game was hunting such game, within the purview of the act and the legislative intent relating thereto, was not erroneous.

DECIDED JULY 10, 1912.

Indictment for misdemeanor; from Worth superior court—Judge Frank Park.  March 16, 1912.

The plaintiff in error was convicted under an indictment charging a violation of the game law of 1911 (Acts 1911, p. 137), and he assigns error on the judgment overruling his motion for a new trial. The indictment is based upon that part of section 14 of the act which is in the following language: "Any person who shall hunt, kill, or destroy by any means whatsoever," any of the game therein designated, except between the dates specified, "shall be guilty of a misdemeanor;" and it charges that the accused "did hunt, with a shotgun, quail, commonly known as 'Bob White partridges,' during the closed season." The evidence in support of this allegation makes in substance the following case: On the afternoon of the day when the offense is alleged to have been committed, the accused, in company with several other men, was in a cotton field, in a wagon, apparently for the purpose of hauling cotton. They had with them a shotgun, and the accused, while in the field, fired this gun in the direction of a covey of partridges, either while they were on the ground or just as they flew up from the ground. No partridge was killed or destroyed, and the sole question presented for the decision of this court is whether, under this evidence, the shooting constituted a hunting of game within the purview of the act. The trial judge instructed the jury on this point as follows: "If you determine that this defendant did, on or about the time named in the bill of indictment, hunt or shoot quail, commonly known as partridges, during the closed season, that is, between the first of March and the first of December, you would be authorized to find him guilty." The use of the words "or shoot quail" is objected to, (1) because the indictment does not charge the accused with shooting, or shooting at, quail, but charges that he did kill, hunt, and destroy quail; (2) because the

statute does not make it an offense to shoot, or shoot at, quail; (3) because the words "to hunt quail" are not synonymous with shooting, or shooting at, quail; and (4) because there was no evidence that the accused was hunting partridges or quail.

*Perry, Foy & Monk,* for plaintiff in error.

*W. E. Wooten, solicitor-general, F. A. Hooper,* contra.

HILL, C. J. (After stating the foregoing facts.)

In construing statutes the usual rule is to give to words their ordinary signification, except where they have a technical meaning by reason of their relation to a particular trade or subject-matter, when they should be given the signification attached to them by experts. Civil Code (1910), § 4, par. 1. The word "hunt" is defined in the Standard Dictionary as "to pursue as game, for the purpose of killing or catching;" and, as thus defined, it may be that the mere casual shooting, or shooting at, game would not be included within the terms "to hunt game." In construing the statute under consideration, as in the interpretation of all other statutes, the legislative intent should govern; and it was clearly intended by the legislature, by the act in question, to protect the game designated by the act, not only from destruction, but from all molestation that might prevent the propagation or increase of the game during the closed season. The hunting of such game during the closed season, without reference to the character of such hunting or the period of time in which it should be carried on, would be to contravene this manifest purpose of the legislature, and would therefore be a violation of the statute. To hold that shooting, or shooting at, game was not hunting game, within the purview of the statute, would open wide the door for easy evasion of the terms of the statute, and we prefer to give to the terms of the statute such construction as will not only uphold it, but will aid in the accomplishment of its manifest purpose. We therefore conclude that the instructions of the learned trial judge were not erroneous. In our opinion he properly construed the specific terms "to shoot," or "to shoot at," as embraced within the general term "to hunt."

*Judgment affirmed.*

RUSSELL, J., dissenting. A strict construction of all criminal statutes is so essential to the safety of the individual citizen, and the right of the legislature to make laws is so distinct from the

duty of the courts in construing them, that I am unable to concur in the judgment of the majority of the court. Personally I am in hearty sympathy with the result sought to be attained by such a construction as my brethren give the game law (Acts 1911, p. 137); but as it is our duty in construing statutes to give words their plain and ordinarily accepted meaning, the inclusion or insertion into the game law of a chance shot is, in my opinion, nothing but legislation by judicial amendment; and the courts have no power to make laws. I do not use the expression "chance shot" intending to convey the impression that the discharge of the defendant's gun was accidental. I assume, from the evidence, that he intended to shoot, and did shoot, at the partridge. But when the General Assembly had before it the subject of protecting our game, with full power and discretion in the premises, it penalized only three classes of acts which might tend to diminish game or prevent its increase. It was made unlawful to "hunt, kill, or destroy by any means whatsoever." We all know the popular meaning of the words "to hunt," or to go hunting, and the legislature knew that when intent to hunt or go hunting had been succeeded by the preparation, and thereafter became an actual fact, game was likely to be destroyed. And, so, hunting within a designated period was prohibited. And, as clearly showing what was in legislative contemplation, as explanatory of the meaning attached to "hunt," the other words used in the context are "kill, or destroy by any means whatsoever." The word "destroy" could perhaps have been omitted, because it is included in "kill." Death is destruction, so far as concerns the propagation and increase of game. The purpose of the legislature was to preserve the life of a certain class of animals during certain seasons. It was within its power to have prohibited the shooting at birds, but it did not do so; and I think the language actually used supplies the reason for the omission. Hunting (although no birds might be killed) would tend to drive them away, and perhaps to interfere with their mating, and with other steps in propagating. Killing or in any way destroying the game would prevent its increase. So the legislature passed a law against game murder; but it did not include assault with intent to murder, except in so far as that the crime denounced by the act of 1911 is a misdemeanor, and any one who attempts to kill or in any way destroy the game

mentioned in the law can (certainly under appropriate allegations) be convicted of the attempt and likewise punished as for a misdemeanor. Penal Code, § 1066 (7).

A conviction of an attempt to kill the partridges might be sustained in the present case. But I can not approve, as a legal instruction, a charge that a man who has his gun with him, while hauling corn, is "hunting," any more than that it would be "hunting" if I should shoot at a bird which passed the open window where I was reading. If the bird that I killed was within the prohibited class, and the time at which the gun was discharged was within the restricted season, I might be convicted of killing the bird, or destroying it. But if, in attempting to kill it, I missed my aim, I could hardly be said to be guilty of "hunting," in the proper acceptation of that term, unless the game law of 1911 was intended to penalize and punish poor marksmanship.